UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| VELOCITY SOLUTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AFFINION GROUP, INC., ) <br> AFFINION GROUP, LLC, ) <br> AFFINION GROUP HOLDINGS, INC. ) <br> AFFINION BENEFITS GROUP, LLC, ) <br> AFFINION LOYALTY GROUP, INC., ) <br> TRILEGIANT CORPORATION, and ) <br> WEBLOYALTY.COM, INC. d/b/a ) <br>    INCENTIVE NETWORKS ) <br> ) <br> Defendants. ) | Civil Action No. _____ |

## COMPLAINT

Plaintiff Velocity Solutions, Inc. ("Velocity Solutions"), for its Complaint against Affinion Group, Inc., Affinion Group, LLC, Affinion Group Holdings, Inc., Affinion Benefits Group, LLC, Affinion Loyalty Group, Inc., Trilegiant Corporation and WebLoyalty.com, Inc. d/b/a Incentive Networks (collectively, "Defendants"), pursuant to Rules 7 and 8, Federal Rules of Civil Procedure, alleges as follows:

### Jurisdiction and Venue

1. This Complaint is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, for violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. §1125(d), for violation of the North Carolina Unfair & Deceptive Trade Practices Act, N.C.G.S. § 75-1.1, and for unfair competition and trademark infringement under applicable state law.

2. This Court has subject matter jurisdiction over this action upon the following grounds:

   a. 28 U.S.C. § 1331, this being a civil action arising under the laws of the United States;

   b. 28 U.S.C. § 1337(a), this being a civil action arising under an Act of Congress regulating Commerce;

   c. 28 U.S.C. § 1338(a), this being a civil action arising under the trademark laws of the United States, namely, the Lanham Act, 15 U.S.C. § 1051 *et seq.*;

   d. 28 U.S.C. § 1338(b), this being a civil action asserting a claim of unfair competition joined with a substantial and related claim under the trademark laws;

   e. 28 U.S.C. § 1367(a), this being a civil action including claims that are so related to claims that are within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution; and

   f. 28 U.S.C. § 1332, this being an action in which the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

3. Venue is proper in this Court under the provisions of 28 U.S.C. §§ 1391(a), (b), and (c).

## The Parties

4. Plaintiff Velocity Solutions, Inc. is a North Carolina corporation with its principal place of business at 710 Dawson Street, Wilmington, North Carolina 28403.

5. Upon information and belief, Defendant Affinion Group, Inc. is a Delaware corporation with a principal place of business at 6 High Ridge Park, Stamford, Connecticut 06905-1327. Affinion Group, Inc. may be served through its registered agent, Corporation Service Company, 50 Weston Street, Hartford, Connecticut 06120-1537.

6. Upon information and belief, Defendant Affinion Group, LLC is a Delaware limited liability company with a principal place of business at 6 High Ridge Park, Stamford, Connecticut 06905-1327. Affinion Group, LLC may be served through its registered agent, Corporation Service Company, 50 Weston Street, Hartford, Connecticut 06120-1537.

7. Upon information and belief, Defendant Affinion Group Holdings, Inc. is a Delaware corporation with a principal place of business at 6 High Ridge Park, Stamford, Connecticut, 06905-1327. Affinion Group Holdings, Inc. may be served through its registered agent, Corporation Service Company, 50 Weston Street, Hartford, Connecticut, 06120-1537.

8. Upon information and belief, Defendant Affinion Benefits Group, LLC is a Delaware limited liability company with a principal place of business at 400 Duke Drive, Franklin, Tennessee 37067-2700. Affinion Benefits Group, LLC may be served through its registered agent, Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

9. Upon information and belief, Defendant Affinion Loyalty Group, Inc. is a Delaware corporation with a principal place of business at 7814 Carousel Lane, Richmond, Virginia 23294-4212. Affinion Loyalty Group, Inc. may be served through its registered agent, Corporation Service Company, Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, Virginia 23219-3532.

10. Upon information and belief, Defendant Trilegiant Corporation is a Delaware corporation with a principal place of business at 6 High Ridge Park, Stamford, Connecticut, 06905-1327. Trilegiant Corporation may be served through its registered agent, Corporation Service Company, 50 Weston Street, Hartford, Connecticut, 06120-1537.

11. Upon information and belief, Defendant Webloyalty.com, Inc. d/b/a Incentive Networks is a Delaware corporation with a principal place of business at 101 Merritt 7, Stamford, Connecticut, 06851. Webloyalty.com, Inc. may be served through its registered agent, Corporation Service Company, 50 Weston Street, Hartford, Connecticut, 06120-1537.

### Background Facts Regarding Plaintiff and the MY REWARDS® Mark

12. Since at least as early as May 2005 or prior to the earliest of the use of any of the BANK MY REWARDS, BANKMYREWARDS, MYBANKREWARDS or MY BANK REWARDS designations (collectively, the "Infringing Designations") by any of the Defendants, Plaintiff has used in commerce in this country the mark MY REWARDS in connection with advertising services, namely, creating corporate brand identities for banks by conducting incentive award programs for consumers to purchase merchandise of others via a gift redemption program. (Declaration of N. Carmichael Bender, II, attached hereto at Exhibit E, hereinafter "Plaintiff's Decl.", at ¶4).

13. In large measure due to the importance of the MY REWARDS business to Plaintiff, Plaintiff also has used the MY REWARDS mark as a trade name, referring to the company and its services as "My Rewards." (Id., at ¶5). The MY REWARDS mark and name continue to be a central part of Plaintiff's corporate identity. (*See* Plaintiff's Decl., at ¶6).

14. Since Plaintiff's adoption of the MY REWARDS designation as a service mark and trade name, Plaintiff has had well in excess of seven million (7,000,000) discrete checking

accounts active in its MY REWARDS program, originating from over 120 financial institution clients of Plaintiff. (Id. at ¶7).

15. Plaintiff markets and advertises its MY REWARDS services through a variety of channels and means, including by regularly attending trade shows attended by members of the financial services industry. At trade shows such as the Best Practices in Retail Financial Services Symposium ("Best Practices Trade Show") and the Card Forum & Expo ("Card Forum Trade Show"), Plaintiff has made substantial investments to market and advertise its MY REWARDS services to financial services who attend these events, and by extension to their millions of account holder customers. For example, at the 2007 Best Practices Trade Show and at the 2007 Card Forum Trade Show, Plaintiff was a key sponsor and had marketing materials, including a tin container prominently displaying the MY REWARDS mark on its top cover, distributed to each attendee of the show. (Plaintiff's Decl., at ¶ 7).

16. The MY REWARDS mark and name is well-recognized by financial services institutions and by their customers, the account holders themselves. As a result of Plaintiff's extensive use, advertising and promotion of the MY REWARDS mark, the MY REWARDS mark has attained for Plaintiff substantial goodwill among the purchasing public. (Id., at ¶8).

17. In order to strengthen the MY REWARDS trademark, Plaintiff applied to register the MY REWARDS trademark with the U.S. Patent and Trademark Office (the "PTO") on July 14, 2005. The PTO approved the application and granted to Plaintiff U.S. Registration No. 3,125,505 for the mark MY REWARDS® on August 8, 2006. U.S. Registration No. 3,125,505 is live, subsisting and incontestable. (Id., at ¶ 9). Attached at Exhibit A hereto is a true and correct copy of the registration certificate for U.S. Reg. No. 3,125,505 available at the PTO website.

18.     At the time of registration of the MY REWARDS® mark, Plaintiff's corporate name was Image Products, Inc., d/b/a MY REWARDS. After issuance of U.S. Reg. No. 3,125,505, Image Products, Inc. changed its name to Velocity Solutions, Inc. Attached at Exhibit B hereto is a true and correct copy of the name change record for U.S. Reg. No. 3,125,505 available at the PTO website, recording a conveyance in the nature of a change of name from Image Products, Inc. to Velocity Solutions, Inc.

19.     Having been registered and used continuously for more than five years, the MY REWARDS® mark is incontestable under U.S. law. Attached at Exhibit C hereto is a true and correct copy of the Combined Declaration of Use and Incontestability under Sections 8 & 15 for U.S. Reg. No. 3,125,505 available at the PTO website.

20.     By virtue of Plaintiff's extensive use and federal registration of the MY REWARDS® mark, the Defendants are and have been on constructive notice, if not actual notice, of Plaintiff's rights in the MY REWARDS® mark since prior to their adoption and use of their Infringing Designations.

## Unlawful Acts of the Defendants

21.     On information and belief, Defendants Affinion Group Holdings, Inc., Affinion Group, Inc., Affinion Group, LLC, and Affinion Loyalty Group, Inc. each have the same directors and/or principals, namely Nathaniel J. Lipman, Todd Siegel, Albert Fino, and Sloane Levy.

22.     On information and belief, Defendant Trilegiant Corporation has three directors and/or principals, namely Nathaniel J. Lipman, Albert Fino, and Todd Siegel.

23. On information and belief, Defendant Webloyalty.com, Inc. d/b/a Incentive Networks has three directors and/or principals, namely Richard J. Fernandes, Sloane Levy, and Todd Siegel.

24. On information and belief, Defendant Trilegiant Corporation is a wholly-owned subsidiary of Affinion Group, LLC.

25. On information and belief, Defendant Affinion Benefits Group, LLC is a wholly-owned subsidiary of Affinion Group, LLC.

26. On information and belief, Defendant Affinion Group, LLC is a wholly-owned subsidiary of Affinion Group, Inc.

27. On information and belief, Defendant Affinion Loyalty Group, Inc. is a wholly-owned subsidiary of Affinion Group, Inc.

28. On information and belief, Defendant Affinion Group, Inc. is a wholly-owned subsidiary of Affinion Group Holdings, Inc.

29. Defendants, through their common directors and/or principals, conflate their activities through the intentional use of the phrase "Affinion Group."

30. Without authorization, license or consent from Plaintiff, the Defendants have been using reproductions, counterfeits, copies and colorable imitations of Plaintiff's registered MY REWARDS® mark in North Carolina and elsewhere in this country, in connection with the advertising, marketing, offering for sale, sale and distribution of an affinity program to banks and their customers, and in a manner which is likely to cause confusion, to cause mistake and to deceive consumers and potential consumers.

31. The Defendants also have applied unauthorized reproductions, counterfeits, copies, and colorable imitations of Plaintiff's MY REWARDS® mark to the labels, signs, prints,

packages, wrappers, receptacles and advertisements used and intended to be used in commerce upon or in connection with the advertising, marketing, offering for sale, sale and distribution of an affinity program to banks and their customers, and in a manner which is likely to cause confusion, to cause mistake and to deceive consumers and potential consumers.

32. The Defendants have been and are using in commerce in North Carolina and elsewhere in this country the Infringing Designations, each of which is identical to Plaintiff's mark save for the term BANK and, in the instance of MYBANKREWARDS, with the absence of spaces between the words. (*See* "Fee Income Panel, Wayne Conte, EVP, Affinion Group", hereinafter "Affinion Presentation", attached to Exhibit D, Declaration of Charles Landrum, hereinafter "Landrum Decl.", at Exhibit D(1) thereto, at 9-11) (using each of the Infringing Designations).

33. Moreover, the term BANK is descriptive of the customers to which the Defendants promote their services and of the market channels in which the Defendants do business.

34. Financial institutions, including banks, comprise the significant majority of Defendants' clientele. (*See* 10-Q for Affinion Group Holdings, Inc., filed Nov. 1, 2012, hereinafter "Affinion 10-Q", attached to Landrum Decl. at Exhibit D(2) thereto, at 39) ("Historically, financial institutions have represented a significant majority of our marketing partner base.").

35. On information and belief, Defendants regularly enter into non-compete agreements with executives prohibiting "engage[ment] in any business that markets, provides, administers or makes available affinity-based membership programs, affinity-based insurance programs, benefit packages as an enhancement to *financial institutions*." (*See, e.g.,* Affinion 10-

Q, "Employment Agreement (Nathaniel J. Lipman)" at 77 and "Employment Agreement (Mark Gibbens)" at 100) (emphasis added).

36. Plaintiff's MY REWARDS® mark also is targeted predominantly to banks, such that the Defendants' use in that market channel and with the BANK component enhances, rather than detracts, from the likelihood of confusion.

37. Defendants have known of Plaintiff's rights in the MY REWARDS® mark for several years, well before Defendants, or any of them, adopted their Defendants' Infringing Designations. In fact, Defendants had a number of employees in attendance at the 2007 Best Practices Trade Show and at the 2007 Card Forum Trade Show, at which each of the Defendants' employees attending the trade shows would have received a MY REWARDS® marketing tin distributed to attendees by Plaintiff as a way for Plaintiff to advertise the MY REWARDS® services. Defendants' later adoption of confusingly similar marks was done willfully, with knowledge of Plaintiff's rights in the MY REWARDS® mark, and with the intent to infringe Plaintiff's rights.

38. By marketing, advertising, offering for sale, selling and distributing services bearing and in conjunction with the Defendants' Infringing Designations, the Defendants intentionally have violated Plaintiff's rights in and to the MY REWARDS® mark and the related registration, and with the knowledge and intention that the use in commerce would cause and is causing confusion, mistake and deception among consumers and potential consumers.

39. The Defendants also, in connection with the marketing, advertising, offering for sale, sale and distribution of services bearing and in conjunction with the Defendants' Infringing Designations, have caused, are causing and are likely to cause confusion and mistake, and have deceived and are likely to deceive, as to the affiliation, connection, and association of the

Defendants with Plaintiff, and as to the origin, sponsorship, and approval of the Defendants' goods, services and commercial activities.

40. Within just a few weeks of Defendants' launch of their BANK MY REWARDS program using the Infringing Designations, Plaintiff became aware of at least one instance of a financial institution customer of Plaintiff being contacted or receiving information regarding Defendants' BANK MY REWARDS program and making an association between Defendants' program and Plaintiff's MY REWARDS® mark. (*See* Plaintiff's Decl., at ¶12).

41. The Defendants also have obtained and used domain name registrations in violation of Plaintiff's rights. On information and belief, Defendant Trilegiant Corporation registered and Defendants use the domain name <bankmyrewards.com>, all without legitimate rights in the term and with bad faith intent to profit from the unlawful use of Plaintiff's MY REWARDS® mark, which was distinctive at the time the domain name was registered.

42. Defendant Trilegiant Corporation, on information and belief, registered the <bankmyrewards.com> domain name on or about May 10, 2012, long after Plaintiff's registration of the MY REWARDS® mark with the PTO. Pursuant to Section 43(d) of the Lanham Act and 15 U.S.C. § 1117(d), Plaintiff is entitled to a forfeiture and cancellation or transfer of the <bankmyrewards.com> domain name, plus actual or statutory damages of up to $100,000 per each of the Defendants' infringing domain names.

43. The Defendants' use of domain names containing the MY REWARDS® mark in conjunction with the marketing, advertising, offering for sale, sale and distribution of affinity programs to banks also constitutes trademark infringement and unfair competition in violation of Plaintiff's rights.

44. The Defendants also have established interactive websites on the domain <bankmyrewards.com> for Defendants' clients using Defendants' Infringing Designations.

45. The Defendants designed the websites on <bankmyrewards.com> to appear as if the content and services are provided by Defendants' clients and potential clients, namely banks and credit unions, rather than by Defendants. (*See* Affinion Presentation, at 11) ("<u>Branded for and Delivered from Credit Union</u>, BankMyRewards, Private label site is tailored with credit union logo, colors, header and footer") (emphasis added).

46. The Defendants have designed such websites for at least Cadence Bank, The Citizens Bank of Philadelphia (Mississippi), Peoples Bank of Alabama, and Sun National Bank. (*See* Landrum Decl., at Exhibit D(3) thereto).

47. Customers of Defendants' clients access the interactive websites on <bankmyrewards.com> from North Carolina and elsewhere, permitting customers of Defendants' clients to use Defendants' services in association with the Infringing Designations, including but not limited to the purchase of gift cards.

48. The Defendants do not charge to register for the "Bank My Rewards" program. (Id.) ("Best of all, it's 100% Free!").

49. On information and belief, the Defendants have designed the websites to permit consumers to register for the "Bank My Rewards" program without reading and acknowledging the applicable "Terms & Conditions". Potential customers need only provide their name, e-mail address, and a password to register with the "Bank My Rewards" program.

50. The Defendants, through these websites, set forth a "Privacy Policy" containing a nonfunctional hyperlink for parties who wish to "opt out" of having their "Personal Information"

shared with Defendants and third parties. (*See* "Bank My Rewards Privacy Policy," attached to Landrum Decl. at Exhibit D(4) thereto, at 3 ¶4); (*see also* Landrum Decl., at ¶5).

51. The Defendants, whether deservedly or not, have been accused numerous times of questionable consumer practices. (*See, e.g.*, "affinion | Ripoff Report | Complaints Reviews Scams Lawsuits Frauds Reported," attached to Landrum Decl., at Exhibit D(6) thereto).

52. The Defendants, either directly or through affiliated companies, are defendants in multiple lawsuits, class actions and otherwise, related to Defendants' membership and registration practices. (Affinion 10-Q, at 14-16).

53. The Defendants have also entered into settlements with governmental entities related to these practices. (Id.).

54. Defendants' BANK MY REWARDS program is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such program with Plaintiff, and mislead or confuse as to the origin, sponsorship, or approval of Defendants' BANK MY REWARDS program. (*See* Plaintiff's Decl., at ¶13).

55. Plaintiff further believes that the extensive consumer complaints directed to Defendants, whether deserved or not, Defendants' role in the numerous lawsuits, regardless of merit, and Defendants' settlements with government entities, combined with the likelihood that the registration and "privacy policy" practices set forth above will induce more of the same, will cause severe and irreparable harm to Plaintiff, its MY REWARDS® mark and the goodwill Plaintiff has built up in its MY REWARDS® mark over several years and due to substantial investment of resources. (Id., at ¶14).

56. The Defendants' acts complained of herein have been willful, wanton and in reckless disregard of Plaintiff's rights, with the intent to cause harm to the rights of Plaintiff, and

such acts have caused actual confusion among potential consumers of Plaintiff's services sold under and in conjunction with its MY REWARDS® mark.

### COUNT I: Infringement of Registered Mark, 15 U.S.C. § 1114

57. Plaintiff incorporates by reference paragraphs 1-56 above as if fully set forth herein.

58. The acts of the Defendants complained of herein constitute trademark infringement of a registered mark under the Lanham Act, 15 U.S.C. § 1114.

59. Plaintiff has been damaged by the acts of each of the Defendants complained of herein.

### COUNT II: Contributory Trademark Infringement of Registered Mark, 15 U.S.C. § 1114

60. Plaintiff incorporates by reference paragraphs 1-59 above as if fully set forth herein.

61. The acts of the Defendants complained of herein constitute contributory trademark infringement of a registered mark under the Lanham Act, 15 U.S.C. § 1114.

62. Plaintiff has been damaged by the acts of each of the Defendants complained of herein.

### COUNT III: Unfair Competition, 15 U.S.C. § 1125(a)(1)(A)

63. Plaintiff incorporates by reference paragraphs 1-62 above as if fully set forth herein.

64. The acts of the Defendants complained of herein constitute unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

65. Plaintiff has been damaged by the acts of each of the Defendants complained of herein.

## COUNT IV: Contributory Unfair Competition, 15 U.S.C. § 1125(a)(1)(A)

66. Plaintiff incorporates by reference paragraphs 1-65 above as if fully set forth herein.

67. The acts of the Defendants complained of herein constitute contributory unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

68. Plaintiff has been damaged by the acts of each of the Defendants complained of herein.

## COUNT V: Violation of Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)

69. Plaintiff incorporates by reference paragraphs 1-68 above as if fully set forth herein.

70. The acts of the Defendants complained of herein constitute violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

71. Plaintiff has been damaged by the acts of each of the Defendants complained of herein.

## Count VI: Unfair & Deceptive Trade Practices, N.C.G.S. § 75-1.1

72. Plaintiff incorporates by reference paragraphs 1-71 above as if fully set forth herein.

73. The acts of the Defendants complained of herein constitute unfair methods of competition in or affecting commerce, and unfair and deceptive acts or practices in or affecting commerce, which proximately have caused actual injury to Plaintiff and its business in this State and elsewhere.

74. The acts of the Defendants complained of herein have had the tendency to deceive and mislead consumers and created a likelihood of deception with respect to the Defendants'

Infringing Designations and related services, and were performed willfully, wantonly, with the intent to harm Plaintiff and its rights in the MY REWARDS® mark, and with the intent to compete unfairly with Plaintiff.

75.     Plaintiff has been damaged by the acts of each of the Defendants complained of herein.

## Prayer for Relief

WHEREFORE, Plaintiff requests that the Court:

(a) Preliminarily and permanently enjoin the Defendants from infringing, contributing to the infringement by others or inducing infringement of Plaintiff's MY REWARDS® mark and from making any continued use of the Defendants' Infringing Designations;

(b) Preliminarily and permanently enjoin the Defendants from unfairly competing, contributing to the unfair competition by others, or inducing unfair competition with Plaintiff;

(c) Ordering that the Defendants transfer to Plaintiff all domain names owned or registered by any of them having the MY REWARDS® mark or similar term as a component therein, and prohibiting each of them from registering or owning any domain name infringing of Plaintiff's MY REWARDS® mark, including each and every domain name that has the terms "my" and "rewards" together therein;

(d) Award Plaintiff all monetary remedies to which it is entitled under the Lanham Act, the Anti-Cybersquatting Consumer Protection Act, and the North Carolina Unfair & Deceptive Trade Practices Act, including, without limitation, any and all profits realized by the Defendants, any and all profits realized any party with regard to whom the Defendants have contributed to or induced infringement or unfair competition, any damages sustained by Plaintiff, statutory damages to be elected by Plaintiff,

treble, enhanced and punitive damages available under North Carolina and federal law, and Plaintiff's costs and attorneys' fees, pursuant to 15 U.S.C. § 1117 and N.C.G.S. 75-1.1 *et seq.*

(e) Order the destruction of all infringing articles sold on or in conjunction with the Defendants' Infringing Designations, pursuant to 15 U.S.C. § 1118.

(f) Award Plaintiff its reasonable attorneys' fees; and

(g) For such other and further relief as the Court deems just and reasonable.

**Plaintiff demands a jury trial on all issues so triable.**

Dated: December 21, 2012

Jason M. Sneed, Esq. (NC Bar No. 29593)
Charles M. Landrum III (GA Bar No. 312056)
*to be admitted pro hac vice*
SNEED PLLC
610 Jetton St., Suite 120-107
Davidson, North Carolina 28036
Tel.: 704-779-3611
Email: JSneed@SneedLegal.com
Email: CLandrum@SneedLegal.com

*Attorneys for Plaintiff Velocity Solutions, Inc.*

4811-4283-1633, v. 7